UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARTAY LOVE, | ) | |
|---|---|---|
| Movant, | ) | |
| vs. | ) | Case No. 4:05CV887 CDP |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

# **MEMORANDUM AND ORDER**

Martay Love seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Love pleaded guilty in August of 2003 to one count of bank fraud. He was sentenced on November 20, 2003 to 90 months' imprisonment. Case No. 4:02CR495 CDP (E. D. Mo.). The Court of Appeals dismissed his appeal on March 4, 2004, because he had waived the right to appeal in his plea agreement. Love then filed this § 2255 motion.

As grounds for relief under § 2255, Love claims (1) that his counsel was ineffective for failing to file a petition for writ of certiorari with the United States Supreme Court; (2) that his sentence was illegal because it was based on facts that he did not admit; (3) that his attorney was ineffective for failing to explain the Presentence Report to him and for failing to call his co-defendants to testify at the sentencing hearing. I will deny his motion for the reasons that follow.

**Background**

Martay Love was one of eleven defendants charged in a multi-count indictment relating to bank and real estate fraud. In his plea agreement he and the government recommended that his base offense level would be six, that fourteen levels would be added because the loss was greater than $400,000, that he would receive a three-level increase for his role in the offense, and that he would receive three levels off for acceptance of responsibility. If I had followed these recommendations, Love would have had an offense level of 21. His criminal history category was IV, so his sentencing range under the then-mandatory sentencing guidelines would have been 57 to 71 months.

At his guilty plea Love stated that he understood that the judge did not have to follow the parties' guidelines recommendations, and that he would not be allowed to withdraw his guilty plea even if the court did not follow the recommendations. The plea agreement warned in writing that Love could lose his credit for acceptance of responsibility if he engaged in conduct inconsistent with acceptance of responsibility. In the agreement he also waived his right to appeal as long as the court did not depart from the sentencing guidelines, and he waived his right to file a § 2255 motion except for grounds of ineffective assistance of counsel or prosecutorial misconduct.

After entering his guilty plea, Love engaged in telephone conversations with some of his co-defendants who were then still facing trial. The jail where he was incarcerated recorded these telephone conversations. The conversations included discussions regarding whether Love would provide false testimony that would be exculpatory for the co-defendants. Love prepared two affidavits stating that some of his co-defendants were not involved in the crime. He provided the affidavits to at least one of the co-defendants.[1] At sentencing, and in letters to the court before sentencing, Love admitted that he wrote the two affidavits, that the statements in them were false, and that he made at least one of them in return for a promise of $3500, which was never paid.

Because of Love's admitted signing of false affidavits, I ruled that he should not receive any levels off his sentencing guidelines for acceptance of responsibility under § 3E1.1, and I ruled that he should receive two additional levels for obstruction of justice under §3C1.1. Thus his total offense level was 25, and with a criminal history category of IV, his sentencing guidelines range was 84 to 105 months. I sentenced him to 90 months' imprisonment.

---

[1] He also agreed to testify at their trial, but the co-defendants' counsel chose not to call him as a witness. (Docket entry # 558, Trial Transcript, at p. 3-4).

## Discussion

An evidentiary hearing is not required in a § 2255 case where the files and records in the case conclusively show that the movant is not entitled to relief. U.S. v. McGill, 11 F.3d 223, 226 (1st Cir. 1993); United States v. Schmitz, 887 F.2d 843 (8th Cir. 1989). The record here conclusively shows that there is no basis for relief, and so a hearing is not necessary.

Love's first and third claims for relief argue that counsel was ineffective for failing to file a petition for certiorari, for failing to explain the Presentence Report to him, and for failing to call his co-defendants to testify at the sentencing. The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. Strickland v. Washington, 466 U.S. 668, 686 (1984). "The right to counsel is the right to the effective assistance of counsel." Id. To prevail on these claims Love must show both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id. at 687, and that he was prejudiced by counsel's conduct.

Love's first claim is that counsel was ineffective for failing to file a petition for certiorari with the United States Supreme Court. Love's attorney has filed an

affidavit stating that he was never asked to file such a petition. I do not believe a hearing is necessary on this claim because there is no set of circumstances where Love would be able to show that he was prejudiced from the failure to file a cert petition. Love waived his right to appeal in his plea agreement. The only exception to that waiver was if I departed from the sentencing guidelines range, and I did not depart. The Court of Appeals dismissed his appeal for that reason. The Eighth Circuit has repeatedly held that appeal waivers are valid so long as they are entered knowingly and voluntarily and so long as the court discusses them with the defendant at the guilty plea, as required by Rule 11, Fed. R. Crim. P. United States v. Andis, 333 F.3d 886 (8th Cir. 2003); see also, e.g., United States v. Taylor, 515 F.3d 845 (8th Cir. 2008). There is no reasonable likelihood that the Supreme Court would have accepted certiorari in a case like this, where the dismissal was based on a waiver. Cf. Steele v. United States, 518 F.3d 986 (8th Cir. 2008) (counsel not ineffective for failing to file petition for certiorari; movant required to show she would have succeeded in obtaining a writ and a reasonable probability that Supreme Court would have reduced sentence). Counsel cannot be held to be ineffective for failing to make a meritless argument. Love has not shown that he was prejudiced by this action, and so I will deny his first claim that counsel was ineffective.

Love's second claim of ineffectiveness is that counsel failed to consult with him before sentencing, failed to explain the guidelines enhancements, failed to go over the Presentence Report with him, and failed to call the co-defendants as witnesses. Taking the last argument first, Love has failed to set out what the co-defendants would have testified to if called at his sentencing hearing. He says they would have rebutted the claim that he obstructed justice, but given that he admitted preparing false affidavits in exchange for money, it is hard to imagine what testimony these co-defendants would have given that could have rebutted Love's own admissions. Love certainly never indicated at the sentencing hearing that he wanted to call witnesses, and he had ample opportunity to do so.

All of Love's other arguments are contradicted by his own statements at the sentencing hearing. I had had received several letters purporting to be from Mr. Love, and some of them complained about his lawyer's conduct. They also admitted to writing the false affidavits. One letter said: "I wrote and signed to [sic] false affidavits for a codefendant which I admit to doing and apologize to the Court for my behavior." Another letter said: "I admit to writing and signing the affidavits for Haneef for the sum of 3500, which I didn't receive, and apologize again for my behavior. I needed the money for my family." When questioned about the letters at the sentencing, Love stated that he wanted counsel to continue

representing him and that they had discussed the Presentence Report:

> Q: . . . Okay, well, Mr. Love, why don't you step up to the lectern and let me find out whether you are telling me you want to go forward with Mr. Butts, or whether you are telling me you do not want to go forward with Mr. Butts as your lawyer. That's the first question. Do you want Mr. Butts to represent you, or are you asking me to do something else?
>
> A: I would like him to represent me.
>
> Q: You realize you can't come back later and tell me I was wrong for letting him represent you. You cannot claim you got ineffective assistance of counsel for anything he has done up to this point. You can't use that as a way to get your sentence reduced to get out of jail or anything. Do you understand that?
>
> A: Yes, ma'am.
>
> Q: You are giving up your right to ever come back and claim that Mr. Butts did anything wrong up to this point in time. Do you understand that?
>
> A: Yes, ma'am.
>
> Q: Did you have a chance to go over the Presentence Report and discuss it with him? I ask every defendant I sentence this question, and you have to either say yes or no.
>
> A: Yes.

Love's lawyer disputed whether certain of the documents sent from the jail had been signed by Love, but recommended that he assert his fifth amendment privilege against self-incrimination and refuse to answer whether those documents

had been sent by him. Love did answer, however, regarding the hand-written letters that are quoted above:

> Q: Okay, Mr. Love, are these – did you send these documents to me?
>
> A: Yes, ma'am.
>
> Q: One of them that I received on November 18th and was sent in an envelope that is post marked November 17th is headed Petition for Ineffective Assistance of Counsel, and it requests this Court to issue a ruling of ineffective assistance of counsel. Are you withdrawing that motion?
>
> A: Yes, ma'am.
>
> . . .
>
> Q: The other two letters, you also are standing by what is in the other two letters?
>
> A: Yes, ma'am.
>
> . . .
>
> Q: . . . But Mr. Love, you have told me you want to go forward with Mr. Butts, right?
>
> A: Yes, ma'am.

(Docket entry # 609, Sentencing Transcript at p. 12-16). At the end of the sentencing hearing, after the government had presented its evidence on the obstruction of justice issue, I gave Love an opportunity to speak:

Q: Okay. All right. Thank you. Mr. Love, do you wish to make any statements to me before I impose sentence? It's your right to do so and this is your chance.

A: No, Your Honor.

Q: Are you sure? You know, you filed a lot of things, and you've sent things to the Court, and you were doing it before your plea, and you know, I mean, you filed more stuff with the Court on your own than a lot of defendants do, and I don't want you to think that this is just another day, and that when you go out of here today that tomorrow you can send me a handful of letters and that something will happen as a result of that. This is your chance to talk to me. You cannot send me letters after this and ask for stuff. you were not supposed to be doing it beforehand because you had a lawyer, but once I sentence you, you know, I'm not going to have jurisdiction over your case, and I'm not going to do any thing to help you or to hurt you either, but I'm not going to become a pen pal with you, and you can't send me letters tomorrow telling me that everything we did today you changed your mind about, or anything else, and so you don't have to say anything to me now, but I just want you to know that this is your chance to say whatever it is you want to say, and it's going to be your last chance to tell me anything, and so I just want to make sure you understand that. Do you understand that?

A: Yes, ma'am.

Thus, at sentencing Love stated that he was satisfied with his counsel's performance and did not want different counsel. He stated that counsel had gone over the presentence report with him. He declined to make any comments although he was given ample opportunity to do so. He was told specifically and repeatedly that he would not be able to come back and make allegations about his

lawyer in an attempt to get a reduced sentence or to get out of jail. He heard the government's evidence concerning obstruction of justice, and he admitted that he had sent the false affidavits. Love cannot show that his counsel was ineffective, because his claims are refuted by his own statements at the sentencing hearing.

The above discussion also disposes of Love's claim that his sentence was illegal because it was based on facts that he did not admit. He specifically admitted the amount of loss and his role in the offense at his plea, both orally at the plea and in writing in the plea agreement itself. (Docket entry # 605, Transcript of change of plea, at p 18-21). The findings I made at sentencing regarding acceptance of responsibility and obstruction of justice were made based on Love's own admissions and the testimony of the government agent. I did not make any findings about the allegation of obstruction of justice by the statements Love made in the tape recorded telephone conversations he had from jail, as it was not necessary to consider that information. (Docket entry # 609, Sentencing Transcript, at p 43). All of the guidelines calculations were based on Love's own admissions, so his arguments about changes in the law because of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005) are unavailing. In any event, the Eighth Circuti has held that <u>Booker</u> does not apply to criminal convictions, such as this one, that became final before it was

decided. See Never Misses a Shot v. United States, 413 F.3d 781 (8th Cir. 2005).

Love's current claims are rebutted by his statements at the plea hearing and at the sentencing hearing. His § 2255 motion argues that he was somehow "coerced" by counsel, but his own statements at the sentencing hearing show that is not true. In some of his supplemental filings, he claims that counsel failed to brief the waiver of appeal issue before the Eighth Circuit, but the records of that court show that is not true. I have carefully considered all of Love's arguments, and have independently reviewed the voluminous criminal file in this case. There is no basis to grant any form of post-conviction relief, and I will deny the § 2255 motion.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Martay Love to vacate, correct or set aside sentence [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability as movant has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that Love's motion to supplement record [#26] is granted.

**IT IS FURTHER ORDERED** that Love's motions for issuance of

subpoena [#14], for decision of jurisdiction issue [#17], for judgment as a matter of law [#27], for amendment of pleadings [#28], and to expedite [#32] are denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2008.